### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

TONI ANNETTE WHITE,

     *Plaintiff*,                CASE NO. 10-CV-14365

*v.*                            DISTRICT JUDGE PATRICK J. DUGGAN
                            MAGISTRATE JUDGE CHARLES E. BINDER

COMMISSIONER OF
SOCIAL SECURITY,

     *Defendant*.
_____/

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned magistrate judge for the purpose of reviewing

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

the Commissioner's decision denying Plaintiff's claim for a period of disability and supplemental security income benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 9, 15, 16.)

Plaintiff was 48 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 5 at 9, 95, 98.) Plaintiff last worked in 2004 and her relevant employment history consisted of work as a medical secretary for 24 years. (Tr. at 114.) Plaintiff filed the instant claims on November 27, 2007, alleging that she became unable to work on September 1, 2004. (Tr. at 95, 98.) The claims were denied at the initial administrative stages. (Tr. at 55, 56.) In denying Plaintiff's claims, the Defendant Commissioner considered affective disorders as possible bases of disability. (*Id.*)

On December 9, 2009, Plaintiff appeared before Administrative Law Judge ("ALJ") Henry Perez, Jr., who considered the case *de novo*. (Tr. at 32.) In a decision dated March 24, 2010, the ALJ found that Plaintiff was not disabled. (Tr. at 6-17.) Plaintiff requested a review of this decision on May 17, 2010. (Tr. at 90.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on October 21, 2010, when the Appeals Council denied Plaintiff's request for review. (Tr. at 3-5.) On November 1, 2010, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

### B.    Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is

multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of

disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence

4

without directly addressing in his written decision every piece of evidence submitted by a party”);
*Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C.      Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income Program ("SSI") of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If Plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,*502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.    Administrative Record

A review of the relevant medical evidence indicates that Plaintiff sought treatment for mental health issues with the Healing Hands Family Health Center in Eastpointe, Michigan, in 2002. (Tr. at 167-72.)

6

Plaintiff was also treated at Macomb Family Services from September 2006 through September 2007. (Tr. at 173-91.) In September 2006, it was noted that a "recent relationship ended with an abusive man" and that Plaintiff "experiences racing thoughts and depressive episodes and suicidal ideations." (Tr. at 182.) It was also noted that Plaintiff was "not currently on medication." (*Id.*) By March 2007, Plaintiff reported she was doing well on medication and she was assessed at a "better" level of functioning. (Tr. at 178.)

A consultative examination ("CE") was performed by Atul Shah, M.D., of the Sierra Medical Group on March 28, 2008. (Tr. at 192-96.) Dr. Shah diagnosed Plaintiff with "bipolar disorder, depressed type, chronic, stable with medications." (Tr. at 194.) Dr. Shah noted that Plaintiff "feels better with the medications." (Tr. at 192.) Dr. Shah's prognosis was "fair." (Tr. at 194.)

A mental residual functional capacity ("RFC") assessment was performed by Kokila Sheth, M.D., on April 7, 2008. (Tr. at 197-201.) The assessment concluded that Plaintiff was moderately limited in her ability to understand and remember detailed instructions but was otherwise not significantly limited in understanding and memory. (Tr. at 197.) Plaintiff was found to be moderately limited in her ability to maintain attention and concentration for extended periods but was otherwise not significantly limited in sustained concentration and persistence. (*Id.*) The assessment concluded that Plaintiff was moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors but was otherwise not significantly limited in social interaction. (Tr. at 198.) Plaintiff was also found to be moderately limited in the ability to respond appropriately to changes in the work setting but was otherwise not significantly limited in adaptation. (*Id.*) The assessment found that Plaintiff maintained the functional capacity to do simple work on a sustained basis under supervision. (Tr. at 199.)

A psychiatric review technique was completed on June 7, 2008 by Dr. Sheth. (Tr. at 202-16.)  Dr. Sheth diagnosed Plaintiff with "bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes)." (Tr. at 205.) Under the "B" criteria, Dr. Sheth found that Plaintiff was mildly limited in her activities of daily living and in maintaining social functioning and moderately limited in maintaining concentration, persistence, or pace. (Tr. at 212.) There were no episodes of decompensation of extended duration. (*Id.*) Dr. Sheth again found that Plaintiff maintained the functional capacity to do simple work on a sustained basis under supervision. (Tr. at 214.)

Plaintiff was also treated at New Passages from August 2008 through April 2009. (Tr. at 217-40.) Nagy Kheir, M.D., indicated that Plaintiff came "here to be evaluated and get medications." (Tr. at 222.) Dr. Kheir noted that Plaintiff was in a "manic phase" of her bipolar illness and that he would "start her on an anti-depressant after resolution of her manic phase." (Tr. at 222-23.)

Plaintiff indicated in her daily activity report that she takes her two children to the bus stop every day, walks, shops in stores for "about 1 hour or more," is fully able to handle her own finances, watches television and goes to church each week, but does not like to be around people. (Tr. at 130-31.) At the administrative hearing, Plaintiff stated that she does some of the cooking but that her fiancé does most of it. (Tr. at 36.) Plaintiff indicated that she was fired from her job because "it was too much" and she was "not able to focus." (Tr. at 37.) Plaintiff testified that she has panic attacks, crying spells, and out-of-body experiences. (Tr. at 37.) When asked to describe the out-of-body experience, she stated, "I could sit here and not feel here, I'll feel like I'm over here or over there." (Tr. at 37.) Plaintiff further testified that she has "racing thoughts" and is

sometimes unable to sit down for longer than five minutes. (Tr. at 38.) Plaintiff stated that her depression symptoms, such as crying spells and not wanting to get out of bed, occur about four times a week. (Tr. at 38.) Plaintiff also stated that out of an eight-hour day, she spends about four hours lying down. (Tr. at 39.) Plaintiff described herself as being "always in fear." (Tr. at 40.) When asked to describe her depression, Plaintiff responded, "I'm just sad." (Tr. at 41.) Plaintiff also stated that she is "too nervous to drive," so she does not have a driver's license and she relies on her fiancé to drive her to appointments. (Tr. at 41.)

The ALJ asked the vocational expert ("VE") to assume a person with Plaintiff's background and with the exertional limitations described by Plaintiff, the VE responded that there are unskilled sedentary occupations with a sit/stand option such as visual inspection, sorting, hand packaging, and hand assembly with approximately 7,000 of the 14,000 jobs available in the state being in Southeastern Michigan. (Tr. at 51-52.) If the non-exertional limitations that Plaintiff testified to were found to be credible, the VE testified that she would be unable to work, especially because of Plaintiff's stated need to lie down for four out of eight hours in the workday. (Tr. at 53.)

### E.    ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements and had not engaged in substantial gainful activity since September 1, 2004, the alleged onset date. (Tr. at 11.) At step two, the ALJ found that Plaintiff's bipolar disorder-manic depression was "severe" within the meaning of the second sequential step. (*Id*.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 11-12.) At step four, the ALJ found that Plaintiff could not perform her past relevant work as a medical assistant. (Tr. at 16.) At step five, the ALJ concluded that Plaintiff retained the residual functional

capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is unable to perform detailed/complex assignments, but is able to perform simple job assignments. She is also unable to tolerate high production/stress levels, but is able to tolerate routine production/stress levels. She is able to relate to supervisors occasionally. (Tr. at 12-16.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 17.)

### F.    Analysis and Conclusions

### 1.    Legal Standards

The ALJ determined that Plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels, but with certain nonexertional limitations. (Tr. at 12-16.) After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2.    Substantial Evidence

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that: (1) the "ALJ improperly rejected Plaintiff's description of her symptoms because they could not be corroborated by objective evidence" even though this "analysis conflicts with SSR 96-7p" (Doc. 9 at 10-11); (2) the "ALJ compounded his error by requiring objective verification even of Plaintiff's testimony regarding her activities of daily

living" (Doc. 9 at 12-13); (3) the "ALJ's finding that the conclusions from the treating and non-treating doctors in the record supported the residual functional capacity he set forth is unsupported by substantial evidence" (Doc. 9 at 13-15); and (4) "When Plaintiff's condition is correctly evaluated, the VE's testimony requires a finding of disability." (Doc. 9 at 15-16.)

### a.    Credibility Determination

When a disability determination that would be fully favorable to a claimant cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789 at *4 (6th Cir. Jan.19, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at *3 (6th Cir. Feb. 11, 1999) (unpublished). However, "[i]f an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).

The social security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an

underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.; Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky,* 35 F.3d at 1038-1039; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *Id.* Although a claimant's description of her physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," C.F.R. §§ 404.1528(a), 416.929(a), "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded *solely* because they are not substantiated by objective medical evidence," S.S.R. 96-7p, at *1 (emphasis added). Instead, the ALJ must consider the following factors:

(i) [D]aily activities;

(ii) The location, duration, frequency, and intensity of . . . pain;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

(v) Treatment, other than medication, . . . received for relief of . . . pain;

(vi) Any measures you use or have used to relieve . . . pain.

*Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); S.S.R. 96-7p, at *3. Furthermore, the consistency of the evidence, including a claimant's subjective statements, is relevant in determining a claimant's credibility. 20 C.F.R. § 404.1527(c); S.S.R. 96-7p, at *5.

After examining the record evidence, I suggest that substantial evidence supports the ALJ's finding that Plaintiff's testimony regarding her level of pain was not fully credible. Contrary to Plaintiff's assertion, the ALJ's evaluation did not engage in an analysis that "conflicts with SSR 96-7p," nor did the ALJ "compound[] his error by requiring objective verification even of plaintiff's testimony regarding her activities of daily living." (Doc. 9 at 10-13.) The ALJ carefully considered the record evidence and determined that Plaintiff has not "generally received the type of medical treatment one would expect for a totally disabled individual." (Tr. at 14.) This consideration is expressly sanctioned by subparagraphs (iv) and (v) of S.S.R. 96-7p, at *5.

In addition, the ALJ properly considered and found that Plaintiff's treatment for her mental impairment did not involve any hospitalizations and was "not only [] essentially routine and/or conservative in nature, but it also has been generally successful in controlling those symptoms, when Claimant is compliant with prescribed treatment." (Tr. at 14-15.) The ALJ also noted that Plaintiff has not alleged that she has suffered from any side effects of the medication as properly considered under subparagraph (iv) of S.S.R. 96-7p, at *5. In addition, the ALJ noted that none of Plaintiff's physicians placed her on any restrictions, which he found to be inconsistent with allegations of disabling symptoms. (Tr. at 15.)

Finally, the ALJ properly considered Plaintiff's reported daily activities under subsection (i) of S.S.R. 96-7p, at *5. (Tr. at 15.) The ALJ noted that Plaintiff's testimony at the administrative hearing that she needs to lie down for four hours out of an eight-hour day was inconsistent with her reported daily activities that she does laundry, shops (for about an hour or more), pays bills,

goes to church and for short walks. (Tr. at 15, 130-31.) Although the ALJ used the phrase "allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty," he followed that with a finding that "even if Claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to Claimant's medical condition . . . ." (Tr. at 15.) Therefore, I suggest that the ALJ engaged in the proper analysis under S.S.R. 96-7p, that the ALJ utilized the proper standards in making his credibility determination, and that the conclusion is supported by substantial evidence.

**b.    GAF Scores**

To the extent that Plaintiff also contends that the ALJ improperly gave Plaintiff's GAF scores, which were in the range of 45-50, too little weight (Doc. 9 at 15), neither the Commissioner nor the Sixth Circuit requires that they be given any weight at all:

> [T]he Commissioner "has declined to endorse the [GAF] score for 'use in the Social Security and SSI disability programs,' and has indicated that [GAF] scores have no 'direct correlation to the severity requirements of the mental disorders listings.'" The GAF scores, therefore, are not raw medical data and do not necessarily indicate improved symptoms or mental functioning.

*Kennedy v. Astrue*, 247 Fed. App'x 761, 766 (6th Cir. 2007) (citations omitted) (finding that increase in GAF score from 55 to 60 was insignificant). Therefore, I suggest that the ALJ's decision not to rely on the GAF scores is of little consequence and does not undermine the ALJ's substantial evidence finding. *See Oliver v. Comm'r of Soc. Sec.*, No. 09-2543, 2011 WL 924688, at *4 (6th Cir. Mar. 17, 2011) (upholding ALJ's decision not to rely on GAF score of 48 because it was inconsistent with other substantial evidence in the record and noting that the "GAF score is not particularly helpful by itself"); *Turcus v. Soc. Sec. Admin.*, 110 Fed. App'x 630, 632 (6th Cir. 2004) (upholding ALJ's reliance on doctor's opinion that plaintiff could perform simple and routine work despite GAF score of 35).

14

c.       **Weight Given to Conclusions of Treating and Non-treating Doctors**

Plaintiff argues that the "ALJ's finding that the conclusions from the treating and non-treating doctors in the record supported the residual functional capacity he set forth is unsupported by substantial evidence." (Doc. 9 at 13-15.) In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6). Therefore, a medical opinion of an examining source is entitled to more weight than a non-examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time. 20 C.F.R. § 404.1527(d)(1)-(2). *See also Rogers*, 486 F.3d at 242 (stating that the "treating physician rule," which provides that "greater deference is usually given to the opinions of treating physicians than to those of non-treating physicians," is a key governing standard in social security cases).

"Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." S.S.R. 96-2p, 1996 WL 374188, at *5 (1996). *See also Rogers*, 486 F.3d at 242. "[A] failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes

15

a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). A physician qualifies as a treating source if the claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 Fed App'x 279, 284 (6th Cir. 2003) (quoting *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)).

In the instant case, I suggest that there are no treating or examining-physician opinions that support the finding that Plaintiff suffers from disabling mental impairments. Plaintiff has been diagnosed with bipolar disorder and depression (Tr. at 192), and has "experience[d] racing thoughts and depressive episodes and suicidal ideations." (Tr. at 182.) However, she experienced these more severe symptoms while "not currently on medication." (*Id.*) When on her medication, Plaintiff reported she was doing well and her doctor assessed her at a "better" level of functioning. (Tr. at 178, 192.) The mental RFC found that Plaintiff maintains the functional capacity to do simple work on a sustained basis under supervision. (Tr. at 199.) Although the psychiatric review technique found that Plaintiff is "moderately limited in maintaining concentration, persistence, or pace," Dr. Sheth again found that Plaintiff maintained the functional capacity to do simple work on a sustained basis under supervision. (Tr. at 212, 214.) In addition, there were no episodes of

decompensation of extended duration noted. (*Id.*) I therefore suggest that the ALJ's hypothetical is supported by substantial evidence. *See Infantado v. Astrue*, 263 Fed. App'x 469, 477 (6th Cir. 2008) (substantial evidence supported ALJ's decision where, although the psychiatrist found "moderate" limitations in the plaintiff's ability to maintain attention and concentration for extended periods, the psychiatrist noted the plaintiff's daily activities and concluded that the plaintiff was capable of performing simple tasks on a sustained basis).

## III.   **REVIEW**

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

 s/ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗 

CHARLES E. BINDER

17

Dated: July 19, 2011 United States Magistrate Judge

## **CERTIFICATION**

 I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Norton Cohen and Andrew Lievense, and served on District Judge Duggan in the traditional manner.

Date:  July 19, 2011     By s/*Jean L. Broucek*
           Case Manager to Magistrate Judge Binder